UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HARRY HARRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-02173-TWP-MPB |
| ) | |
| STANLY[1] KNIGHT Warden, MURAT POLAR, ) | |
| RACHAEL HOUGHTON, CHASITY ) | |
| PLUMMER, PAMELA JOHNSON, and ) | |
| REBECCA TRIVETT, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on State Defendant's Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Stanley Knight ("Warden Knight") (Dkt. 162). Plaintiff Harry Harrison ("Mr. Harrison"), an inmate in the Indiana Department of Correction, has medical conditions that cause chronic pain, and he relies on a wheelchair. Mr. Harrison alleges that Warden Knight, the warden of Plainfield Correctional Facility ("Plainfield") at all relevant times, was deliberately indifferent to the conditions of his confinement by not repairing the damaged sidewalks at the prison because traversing the sidewalks multiple times a day exacerbated his pain.[2] For the reasons explained below, Warden Knight is entitled to qualified immunity on the claim against him in his individual capacity, but because a reasonable juror could conclude that the damaged sidewalks posed a serious risk of harm to Mr. Harrison, summary

---

[1] Defendant Knight's first name was incorrectly spelled by Plaintiff in his Complaint; Defendant's name is spelled Stanley.

[2] Mr. Harrison also asserts claims against medical professionals employed by Wexford of Indiana, LLC, for their provision of his healthcare. The Court will address their summary judgment motion, (Dkt. 166), separately.

judgment is denied on his claim for injunctive relief. Accordingly, the Motion for Summary Judgment, (Dkt. 162), is **granted** as to Warden Knight in his personal capacity and **denied** as to his official capacity.

## I. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

The court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.  FACTS

Mr. Harrison has been incarcerated at Plainfield since November 2017. (Dkt. 52 at 2.) He has chronic medical conditions including degenerative disc disease, epilepsy, sciatica, and mental health issues. *Id.* He has not walked in over three years and uses a wheelchair. (Dkt. 163-1 at 5) (Harrison Dep. at 17:16−17).[3] Mr. Harrison is in constant pain. *Id.* at 46 (192:19−24) ("Whatever I do throughout my day in a 24-hour day, if I'm not sleeping, I have pain. … Everything hurts that I do.").

The sidewalks at Plainfield are damaged. Mr. Harrison estimates that there are 48 places where the sidewalks are damaged, including "big holes." *Id.* at 12, (145:11), 30 (163:22−24), 31 (164:1−2). He leaves his housing unit multiple times a day to go to medical appointments and his job at the law library. *Id.* at 24 (157:3−6). Mr. Harrison has had multiple wheelchair pushers— both assigned and unassigned—to help push his wheelchair since March 2018. *Id.* at 20

---

[3] The Court cites to the deposition of Mr. Harrison first by the page of the PDF, then the page and lines of the deposition. The Court reminds counsel for the Defendant that the pretrial schedule requires the Defendant to include the entire deposition, not excerpts, if the Defendant relies on any part of the Plaintiff's deposition in a motion for summary judgment. (*See* Dkt. 86 at 6.)

(153:5−14).  When he wheels himself, he moves slowly on the sidewalks to avoid the holes.  *Id.* at 21 (154:17−24), 23 (155).

Mr. Harrison first spoke to Warden Knight about the condition of the sidewalks in March 2018 when they were passing one another outside.  *Id.* at 11−12 (144:24−145:1−11).  Mr. Harrison reported that there were "three great big holes in the sidewalk", *id*, which he pointed out to Warden Knight as creating a risk to him in his wheelchair, and Warden Knight responded, "You can avoid them."  *Id.* at 12 (145:14−20).  Frustrated with the response, Mr. Harrison left.  *Id.* at 12 (145:21−23).

Mr. Harrison saw Warden Knight in the fall of 2018 and again asked about the sidewalks.  *Id.* at 14 (147:13−20).  Warden Knight responded that the sidewalks were "in the process of being fixed."  *Id.* at 14 (147:19−23).

On December 6, 2018, Mr. Harrison wrote a letter to Warden Knight stating,

> Im (sic) unable to walk due to my medical problems, Im (sic) in a wheelchair. I travel these sidewalks 4 to 6 times a day and suffer from the beating Im (sic) taking from these sidewalks. Ive wrote medical, maintance, now you Mr. Knight. Whats goin to be done with the damaged sidewalks?

Dkt. 163-2 (errors in original).  Warden Knight responded, "There are no major issues identified. The walks will be monitored throughout the winter and cold months."  *Id.*  This response did not satisfy Mr. Harrison. Dkt. 163-1 at 17 (150:1−5) ("[Y]ou can't monitor a hole. You can't monitor rust. You can't do that, not with these wheelchairs. I mean, what's to monitor? What, the snow?").

Mr. Harrison then sent a letter to a maintenance staff member, who responded that the sidewalks were "a work in progress," and repairs should be complete by spring of 2019.  *Id.* at 17

4

(150:8−12). Further, on January 16, 2019, a grievance officer responded to Mr. Harrison's grievance about the damaged sidewalks stating,

> [T]he sidewalks are an ongoing project that are most likely going to be completed this spring. Medical has swapped out your wheelchair 3 times as they become damaged and they will continue to be sure your wheelchair is in a safe condition. The provider also noted that you are on Mobic and gabapentin [two pain relievers] at this time.

Dkt. 163-3 at 1.

Traversing the damaged sidewalks increases Mr. Harrison's pain. In a January 2019 grievance directed to and signed by Warden Knight, Mr. Harrison reported that his daily travel over the damaged sidewalks caused constant physical pain and mental distress "because of the pounding from the unavoidable ruts and damage all around this facility". (Dkt. 192-1 at 18.)[4] In 2018 and 2019, Mr. Harrison often skipped meals "because [he] just [took] a beating from the sidewalks and [he] just couldn't handle it." (Dkt. 163-1 at 24 (157:5−11).) Further, Mr. Harrison's doctors told him that traveling over the damaged sidewalks "could cause more problems" for his degenerative disc disease and sciatica nerve damage. *Id.* at 44 (190:17−24).

Mr. Harrison testified that between March 2018 and November 2020, three repairs to the sidewalks were made: first, the sidewalk near the custody office, second, the sidewalk near the chapel, and third, the sidewalk between an administrative building and the recreation building. *Id*. at 29 (162:13−20). The last repair was ineffectual, and there are now big holes in that section. *Id.* at 29 (162:20−22). As of November 2020, when Mr. Harrison was deposed, the sidewalks were still damaged. *Id*. at 17 (150:14−17) and 31 (164:4−23).

### III.   DISCUSSION AND ANALYSIS

---

[4] Warden Knight's response was "Your appeal has been reviewed. Facility Level 1 response is appropriate. Appeal Denied." *Id.*

Mr. Harrison argues that Warden Knight was deliberately indifferent to his pain and risk of injury by failing to repair the damaged sidewalks at Plainfield.[5]

Prison staff "must take reasonable measures to guarantee the safety of the inmates" in their charge. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison conditions violate the Eighth Amendment if they pose a substantial risk of serious harm and prison officials are deliberately indifferent to the risk." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 837). To prevail on a hazardous condition of confinement claim, Mr. Harrison must show that "the prison condition presented an objectively, sufficiently serious risk of harm" and that the defendant "knew about the hazardous condition and turned a blind eye to it." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Farmer*, 511 U.S. at 837−38 (to be liable, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

Warden Knight argues that (1) the harm Mr. Harrison alleges is not sufficiently serious; (2) he was not deliberately indifferent to any risk of harm to Mr. Harrison; and (3) he is entitled to qualified immunity. The Court addresses each argument in turn.

**A.**   <u>**Serious Risk of Harm**</u>

With respect to the objective prong of the deliberate indifference analysis, the question is whether Plainfield's damaged sidewalks posed a significant risk of severe harm to Mr. Harrison. Warden Knight argues that the sidewalk damage is not a sufficiently serious condition because Mr. Harrison is able to navigate around the damaged sections of the sidewalk, and he has not been prevented from participating in activities of daily living. (Dkt. 164 at 5.) He also notes that

---

[5] To the extent that Mr. Harrison argues in his response that Warden Knight was also deliberately indifferent to his serious medical needs by failing to supervise the medical defendants, the Court notes that there is no respondeat superior liability in § 1983 cases, and the Court dismissed all claims premised on supervisory liability at screening. (*See*. Dkt. 51 at 2.)

Mr. Harrison states he is in pain all the time, and, thus, "[h]aving to move around a sidewalk does not give rise to a serious condition above and beyond that level." *Id.* at 5−6.

*Anderson* is instructive.  In *Anderson*, 835 F.3d 681, the Seventh Circuit reversed a district court's dismissal of a case in which a handcuffed prisoner slipped and fell on a staircase littered with milk and garbage.  The milk and garbage had been on the staircase for days, and the officers refused to assist the plaintiff down the stairs.  The district court had relied on *Pyles*, 771 F.3d 403, in which the Seventh Circuit held that "'slippery surfaces and shower floors in prison, without more, cannot constitute a hazardous condition of confinement' that violates the Eighth Amendment." *Anderson*, 835 F.3d at 683 (quoting *Pyles*, 771 F.3d at 410–11). The court identified three conditions that distinguished the case from *Pyles*: (1) the milk and several days' worth of garbage on the stairs created an "obstacle course"; (2) being handcuffed behind his back prevented the plaintiff from being able to steady himself; and (3) the guards refused to assist the plaintiff.  *Id*. The court observed that, unlike wet floors in a shower area, "stairs slicked with milk and cluttered with garbage are *not* a necessary condition of prison." *Id.*

As in *Anderson*, there are several factors that could cause a reasonable juror to conclude that the damaged sidewalks posed a serious risk of harm to Mr. Harrison.  First, while some wear and tear on a sidewalk is to be expected, the damage to the sidewalks as described by Mr. Harrison is extensive and atypical, not a necessary condition.  *Cf. Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (noting a "protrusive lip" on a softball field, where the infield joins the outfield, is not a hazardous condition that implicates the Eighth Amendment because such lips "exist on subpar fields across the country.").  Notably, there are no pictures or video in the record showing the condition of the sidewalks at Plainfield, and thus the Court must rely on Mr. Harrison's testimony that the sidewalks are severely damaged (and were damaged at all times relevant to his

7

Amended Complaint, which was filed on January 22, 2020). Second, Mr. Harrison is in a wheelchair. While an able-bodied inmate can choose to step over a hole or walk in the grass, Mr. Harrison must traverse over the sidewalk which, due to the damage, is like an "obstacle course." *Anderson*, 835 F.3d at 683. And third, Mr. Harrison has alleged that the damaged sidewalks affect his daily life activities by forcing him to skip going to the dining hall to avoid exacerbating his pain. That Mr. Harrison suffers from chronic pain does not give Warden Knight a free pass to add to his pain. *See, e.g. Perez v. Fenoglio*, 792 F.3d 768, 777−78 (7th Cir. 2015) ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain.").

Accordingly, there are material issues of fact that preclude summary judgment on the objective element.

**B.     Deliberate Indifference to the Harm**

The subjective element asks whether Warden Knight knew of and disregarded Mr. Harrison's concerns about the sidewalks. "Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson*, 835 F.3d at 683 (internal citations omitted). "Because inmates have been deprived of the ordinary means of protecting themselves, liability in deliberate-indifference cases can be found when prison staff fail to protect a prisoner from a known danger." *Bratchett v. Braxton Environmental Serv. Corp.*, 564 F. App'x 229, 233 (7th Cir. 2014).

It is undisputed that Warden Knight was aware of Mr. Harrison's concerns about the sidewalks – he walked the grounds, communicated with Mr. Harrison about his concerns, and ordered repairs. *See Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (evidence that a warden was personally involved in segregation unit's cold temperatures included knowledge of ice

storm that knocked out power, emergency grievance that inmate could not shut window, and warden's personal tour of segregation unit).  Warden Knight argues that the undisputed evidence shows that he did not disregard the concerns because repairs have been made to the sidewalks, and repairing the sidewalks is an ongoing project at Plainfield.  (Dkt. 164 at 6−7.)

But there are material disputes of fact with respect to Warden Knight's response.  He argues that when Mr. Harrison raised concerns about the sidewalks, "the appropriate authority responded, perhaps not to Plaintiff's liking but in line with realistic expectations and facility resources," and that the repairs ordered by Warden Knight do not evince deliberate indifference. *Id.* at 6−7.  But again, Warden Knight has not submitted any objective proof that the sidewalks have been repaired adequately to create safe passage for Mr. Harrison, or that a lack of repairs is attributable to deficient resources. There are no pictures, no affidavit from Warden Knight (or Plainfield's current warden Tricia Pretorius), no receipts or budget requests, or any other evidence documenting the extent or quality of any repairs. One grievance response indicated that repairs to the sidewalks were expected to be complete by spring 2019, (Dkt. 163-3), but Mr. Harrison testified that the sidewalks were still in disrepair as of November 2020. *See Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (reversing grant of summary judgment in warden's favor, finding a reasonable jury could conclude that warden failed to appropriately act to ameliorate temperature issues in segregation unit).

Further, assuming that weather or other constraints prevented Warden Knight from repairing the sidewalks, there is no evidence that any other steps were taken to address Mr. Harrison's concerns about how traversing the sidewalks at issue increased his pain.  While repairing sidewalks at the facility may have been a significant undertaking, ordering that Mr. Harrison's meals and medication be delivered to him may have been a reasonable response to

9

address Mr. Harrison's ongoing pain. Accordingly, there are material issues of fact that preclude summary judgment on the subjective element.

**C.      Qualified Immunity**

Finally, Warden Knight argues that he is entitled to qualified immunity. "Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). Once a defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to defeat it by showing "two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of the alleged violation." *Id.* (cleaned up). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)). The Court can consider the elements in either order. *Id.*

Looking at the second element, Mr. Harrison must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser*, 933 F.3d at 701 (quoting *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017)). He need not find "a case on all fours with the facts here," but he must point to "some settled authority that would have shown a reasonable officer in [the defendant's] position that her alleged actions violated the Constitution." *Id.* at 702 (cleaned up). The Court must look at the "specific context of the case" to determine "whether the violative nature of particular conduct is clearly established." *Id.* (internal citation and quotation marks omitted).

Warden Knight argues that the evidence shows that the sidewalks at Plainfield are vulnerable to the same elements as any sidewalk in Indiana, he has repaired the sidewalks as needed, and "[t]here is no clearly established precedent for unblemished outdoor sidewalks." (Dkt. 164 at 8.) But this ignores the disputed facts with respect to the extent of the damage, the timing and quality of the repairs, and Mr. Harrison's particular vulnerability as someone with chronic pain who uses a wheelchair as transportation.

The issue is whether Warden Knight should have known that failing to adequately repair the sidewalks or otherwise respond to communicated concerns about the sidewalks violated the rights of an inmate with chronic pain who relies on a wheelchair. The cases Mr. Harrison cites in his response brief concern medical providers' decisions with respect to medical care rather than a warden's response to a facility's physical hazard. (*See* Dkt. 191 at 11−18.) Mr. Harrison has not identified a factually analogous case, nor has the Court found one. Rather, cases dealing with uneven or damaged sidewalks have sided with prison authorities. *See, e.g. Hardin v. Baldwin*, 770 F. App'x 289, 290−91 (7th Cir. 2019) (finding uneven sidewalks "littered with pot holes" did not create a sufficiently serious hazard to state an Eighth Amendment claim); *Sherman v. Lane*, 1998 WL 111649, *6 (N.D. Ill. Mar. 9, 1998) ("Although in an ideal world, sidewalks would be flawlessly paved with no cracks to stumble on, [the plaintiff] has not averred any deliberate indifference on the part of prison officials to his welfare. At most, he has described some negligence[.]"); *Bolds v. Blackwood*, 2014 WL 29446, *2 (N.D. Fla. Jan. 3, 2014) ("Plaintiff does not have a constitutional right that requires prison officials to repair cracked sidewalks[.]").[6]

An official can still be on notice that his conduct violates established law in novel factual circumstances if the "alleged conduct is so egregious that it is an obvious violation of a

---

[6] The Court observes that these cases all deal with able-bodied inmates rather than inmates who use wheelchairs.

11

constitutional right." *Leiser*, 933 F.3d at 702 (internal citations and quotations omitted). That is not the case here. It is undisputed that Warden Knight took some measures to repair the sidewalks; thus his conduct "was not 'egregiously' or 'obviously' unreasonable." *Lovett v. Herbert*, 907 F.3d 986, 993 (7th Cir. 2018) (assigning upper bunk to intoxicated detainee not obviously unreasonable); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (denying qualified immunity because handcuffing prisoner to hitching post for hours in summer sun violated clearly established law).

Because there is no clearly established precedent that would have placed Warden Knight on notice that his conduct violated Mr. Harrison's rights, he is entitled to qualified immunity and summary judgment is **granted** as to all claims against Warden Knight in his individual capacity.

However, qualified immunity only protects Warden Knight from personal liability; it does not prevent Mr. Harrison's claim for injunctive relief from proceeding. *Hanneman v. Southern Door Co. School Dist.*, 637 F.3d 746, 758 (7th Cir. 2012). Accordingly, the motion for summary judgment is **denied** as to Mr. Harrison's official capacity claims. Those claims shall proceed against current Plainfield warden Tricia Pretorius in her official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (the proper government defendant in an injunctive relief action is the official "who would be responsible for ensuring that any injunctive relief is carried out.").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, State Defendant's Motion for Summary Judgment, Dkt. [162], is **GRANTED in part and DENIED in part.** It is **granted** as to all claims against Defendant Stanley Knight in his individual capacity, and **denied** as to claims for injunctive relief. (Dkt. 51 (screening order noting that Amended Complaint seeks injunctive relief).) The **Clerk is directed**

to terminate Stanley Knight in his individual capacity as a defendant on the docket and to substitute Warden Tricia Pretorious in her official capacity as a defendant for Defendant Stanley Knight in his official capacity. No further service of process is required. Fed. R. Civ. P. 22.

The Court prefers that Mr. Harrison be represented by counsel at settlement and at trial. Accordingly, the Court reconsiders the previous denial of Mr. Harrison's renewed Motion for Appointment of Counsel, (Dkt. 158), and finds it should be **granted**. The Court will attempt to recruit counsel on Mr. Harrison's behalf for the remainder of this action.

**SO ORDERED.**

Date: 9/15/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Harry Harrison, #875139
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL'S OFFICE
adrienne.pope@atg.in.gov

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com